UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

EL AL ISRAEL AIRLINES, LTD.,            )
                                        )
                    Plaintiff,          )   Case No.: 2:21-cv-00517-GMN-VCF
       vs.                              )
                                        )   **ORDER**
SWISSPORT USA, INC.,                    )
                                        )
                    Defendant.          )
                                        )

Pending before the Court is Defendant Swissport USA, Inc. ("Defendant's") Motion for Summary Judgment, (ECF No. 28). Plaintiff El Al Israel Airlines, Ltd. ("Plaintiff") filed a Response, (ECF No. 43), and Defendant filed a Reply, (ECF No. 45).

Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 32). Defendant filed a Response, (ECF No. 44), and Plaintiff filed a Reply, (ECF No. 46).

Also pending before the Court is Defendant's Motion to Exclude Expert Testimony, (ECF No. 30). Plaintiff filed a Response, (ECF No. 40), and Defendant filed a Reply, (ECF No. 42).

Also pending before the Court is Plaintiff's Motion to Seal, (ECF No. 33). Defendant filed a Notice of Non-Opposition, (ECF No. 39).[1]

///

---

[1] The public has a presumptive right to inspect and copy judicial records and documents. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). When a party requests to seal a document in connection with a motion for summary judgment, a court may seal a record only if it finds "compelling reasons" to support such treatment and articulates "the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016); *Kennedy v. Watts*, No. 3:17-cv-0468, 2019 WL 7194563, at *2 (D. Nev. Dec. 23, 2019) (applying compelling reasons standard to sealing request made in connection with motion for summary judgment). The exhibits Plaintiff wishes to file under seal contain confidential business information. (Mot. Seal 2:21–4:10, ECF No. 33). For good cause appearing, the Court GRANTS Plaintiff's Motion to Seal.

For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, **DENIES as moot** Plaintiff's Motion for Summary Judgment, **DENIES as moot** Defendant's Motion to Exclude Expert Testimony, and **GRANTS** Plaintiff's Motion to Seal.

## I.   BACKGROUND

This case arises from an incident at McCarran International Airport during which Plaintiff's grounded aircraft struck a stationary light pole, causing over $2.7 million in damage to the aircraft. (Compl. ¶ 3, ECF No. 1). The following facts are undisputed: On June 14, 2019, Plaintiff and Defendant entered into a ground handling agreement through which Defendant, the Handling Company, agreed to provide ground handling services to Plaintiff, the Carrier, at McCarran International Airport. (*Id.* ¶ 2). The agreement specified that Defendant would tow and guide Plaintiff's aircraft using wing-walkers, who communicate with tow drivers to ensure that Plaintiff's aircraft is maneuvered on the ground safely. (*Id.*). On December 13, 2019, Defendant's employee, Mr. Bocalbos, attempted to tow Plaintiff's aircraft from a gate to a remote stand without the assistance of wing-walkers. (*Id.* ¶¶ 3–4). During this process, the aircraft struck a stationary light pole. (*Id.* ¶ 3). In addition to the damage to its aircraft, Plaintiff incurred significant costs for accommodations for passengers and crew members as well as lost revenue resulting from the inability to use the aircraft for eighteen days. (*Id.* ¶ 7).

Plaintiff and Defendant reached a settlement with respect to Plaintiff's claim for the costs of repairing the aircraft and entered into a Limited Release. (*Id.* ¶ 8). Although Defendant agreed to pay for the aircraft repair expenses, Defendant denied any liability. (*Id.*). The Limited Release expressly reserved Plaintiff's right to seek any and all other damages, attorney's fees, and costs without limitation under Nevada law. (*Id.*). Plaintiff initiated this action to recover consequential damages stemming from the aircraft incident. (*See generally id.*); (*see also* Pl.'s Mot. Summ. J. 11:4–12:10, ECF No. 32). Plaintiff alleges two causes of action: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair

1  Dealing. (Compl. ¶¶ 43–58).  Because the parties do not dispute any facts, both parties now
2  move for summary adjudication.

3  **II.     LEGAL STANDARD**

4        The Federal Rules of Civil Procedure provide for summary adjudication when the
5  pleadings, depositions, answers to interrogatories, and admissions on file, together with the
6  affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant
7  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that
8  may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
9  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to
10 return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a
11 genuine issue of material fact is enough 'to require a jury or judge to resolve the parties'
12 differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.
13 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary
14 judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving
15 party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd.*
16 *P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to
17 isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477
18 U.S. 317, 323–24 (1986).

19       In determining summary judgment, a court applies a burden-shifting analysis.  "When
20 the party moving for summary judgment would bear the burden of proof at trial, it must come
21 forward with evidence which would entitle it to a directed verdict if the evidence went
22 uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing
23 the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*
24 *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and
25 quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving

the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

///

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

The competing Motions for Summary Judgment boil down to two legal questions: First, does the ground handling agreement bar recovery for consequential damages stemming from damage to the aircraft, and second, if consequential damages are not barred, does Defendant's conduct meet the contractual standard for liability.[2] The Court addresses each issue in turn.

### A. The Ground Handling Agreement Does Not Bar Consequential Damages

Plaintiff brings its contractual claims for consequential damages[3] pursuant to Article 8.1 of the ground handling agreement. (*See* Compl. ¶¶ 23–27). Article 8.1 states, in pertinent part:

> Except as stated in Sub-Articles 8.5 and 8.6, the Carrier [here, Plaintiff] shall not make any claim against the Handling Company [here, Defendant] and shall indemnify it (subject as hereinafter provided) against any legal liability for claims or suits, including costs and expenses incidental thereto, in respect of:
> (a) delay, injury or death of persons carried or to be carried by the Carrier;
> (b) injury or death of any employee of the Carrier;
> (c) damage to or delay or loss of baggage, cargo or mail carried or to be carried by the Carrier, and
> (d) *damage to or loss of property owned or operated by, or on behalf of, the Carrier and any consequential loss or damage*;

---

[2] Defendant's Motion argues that summary judgment is warranted because (1) Plaintiff is contractually barred from recovering consequential damages "however arising," and (2) Plaintiff cannot prove that Defendant acted recklessly with the knowledge that loss would probably result. (Def.'s Mot. Summ. J., ECF No. 28). Plaintiff's Motion argues that summary judgment is warranted because (1) the contractual standard is solely "recklessness," (2) Defendant acted recklessly, (3) Plaintiff is entitled to consequential damages, and (4) Plaintiff has proven its damages. (Pl.'s Mot. Summ. J., ECF No. 32).

[3] "Consequential losses are those damages that "aris[e] naturally, or were reasonably contemplated by both parties at the time they made the contract." *Andrew v. Century Sur. Co.*, 134 F. Supp. 3d 1249, 1255 (D. Nev. 2015) (quoting *Hornwood v. Smith's Food King No. 1*, 772 P.2d 1284, 1286 (Nev. 1989).

> arising from an act or omission of the Handling Company in the performance of this Agreement unless done with intent to cause damage, death, delay, injury or loss or recklessly and with the knowledge that damage, death, delay, injury or loss would probably result.

(Int'l Air Transport Assoc. Standard Ground Handling Agreement ("SGHA") Art. 8.1, Ex. A to Def.'s Mot. Summ. J., ECF No. 29) (emphasis added). Defendant argues that Article 8.5, rather than Article 8.1, applies to this contractual dispute. (Def.'s Mot. Summ. J. 11:2–25, ECF No. 28). Article 8.5 states the following:

> Notwithstanding Sub-Article 8.1(d), the Handling Company shall indemnify the Carrier against any physical loss of or *damage to the Carrier's Aircraft caused by the Handling Company's negligent act or omission* PROVIDED ALWAYS THAT the Handling Company's liability shall be limited to any such loss of or damage to the Carrier's Aircraft in an amount not exceeding the level of deductible under the Carrier's Hull All Risk Policy which shall not, in any event, exceed USD 1,500,000 except that loss or damage in respect of any incident below USD 3,000 shall not be indemnified.
>
> For the avoidance of doubt, save as expressly stated, this Sub-Article 8.5 does not affect or prejudice the generality of the provisions of Sub-Article 8.1 including the principle that the Carrier shall not make any claim against the Handling Company and *shall indemnify it against any liability in respect of any and all consequential loss or damage howsoever arising*.

(SGHA Art. 8.5, Ex. A to Def.'s Mot. Summ. J.) (emphasis added).

The Court agrees with Defendant that Article 8.5 addresses limitations on the recovery for physical damage to the aircraft. (*See* Def.'s Mot. Summ. J. 13:6–8). Additionally, if Article 8.5 applies, the Court agrees that Article 8.5 bars consequential damages. (*See id.* 13:9–25). But Article 8.5 also specifies the Handling Company's "negligent act or omission." (SGHA Art. 8.5, Ex. A to Def.'s Mot. Summ. J.). That is, Article 8.5 applies to damage to the aircraft caused by a negligent act or omission. (*Id.*). Here, Plaintiff alleges that Defendant acted recklessly. (*See* Compl. ¶¶ 28–39). Nothing in the ground handling agreement bars consequential damages arising from "an act or omission . . . done . . . recklessly and with the knowledge that damage, death, delay, injury or loss would probably result." (*Compare* SGHA

Art. 8.1 *with* Art. 8.5, Ex. A to Def.'s Mot. Summ. J.).  Thus, the Court cannot determine whether the ground handling agreement bars Plaintiff's request for consequential damages without considering the parties' arguments concerning whether Plaintiff can prove that Defendant's conduct met the contractual standard for liability.

### B. Plaintiff Fails to Prove that Defendant's Conduct Meets Standard for Liability

As stated above, the ground handling agreement does not preclude Plaintiff from recovering consequential damages arising from damage to Plaintiff's property caused by Defendant's conduct if Defendant acted "recklessly and with the knowledge that damage, death, delay, injury or loss would probably result." (*See* SGHA Art. 8.1, Ex. A to Def.'s Mot. Summ. J.).  Defendant argues that Plaintiff cannot prove that Defendant acted recklessly and with knowledge that loss would probably result. (Def.'s Mot. Summ. J. 11:26–17:22).  Plaintiff argues that the undisputed evidence establishes a breach of contract because Defendant acted recklessly knowing that damage, delay, or loss would probably result. (Pl.'s Mot. Summ. J. 15:15–17:2, ECF No. 32).  In order to determine which legal conclusion is correct, the Court must first define the contractual standard for liability.

#### 1. Contractual Standard for Liability

Under the express terms of the ground handling agreement, Defendant is liable for consequential damages resulting from damage to Plaintiff's property when Defendant acted "with intent to cause damage, death, delay, injury or loss or recklessly and with the knowledge that damage, death, delay, injury or loss would probably result." (SGHA Art. 8.1, Ex. A to Def.'s Mot. Summ. J.).  Plaintiff does not allege that Defendant acted with intent to cause damage; thus, the issue is whether Plaintiff can prove that Defendant acted recklessly and with the knowledge that damage or loss would result based on the undisputed facts.  The parties disagree on what this standard entails.

///

Plaintiff argues that the contractual standard, though written as a conjunctive statement, is simply the well-defined, objective standard for recklessness. (Pl.'s Mot. Summ. J. 14:1–15:14). The Restatement (Second) of Torts identifies two types of reckless conduct:

> In one the actor knows, or has reason to know, . . . of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so. An objective standard is applied to him, and he is held to the realization of the aggravated risk which a reasonable man in his place would have, although he does not himself have it.

Restatement (Second) of Torts § 500 (1965). These two types of reckless conduct demonstrate that the standard for recklessness necessarily assumes that the tortfeasor objectively knew or should have known that harm is likely to result. *Id.* Because an objective standard applies, Plaintiff argues that Defendant's subjective intent is irrelevant. (Pl.'s Mot. Summ. J. 15:9–10).

Defendant argues that the contractual standard requires more than the general standard for recklessness. (Def.'s Mot. Summ. J. 12:26–13:1). Indeed, the plain language of the contract specifies that the standard for liability is "recklessly *and* with the knowledge that damage, death, delay, injury or loss would probably result." (SGHA Art. 8.1, Ex. A to Def.'s Mot. Summ. J.). Defendant argues that this language requires Plaintiff to prove that Defendant, or its employee Mr. Bocalbos, had subjective knowledge that damage would probably result, in addition to proving the objective standard for recklessness. (*Id.*).

The Court agrees with Defendant's interpretation of the contract language. "[T]he Court is required under Nevada law to seek a 'reasonable interpretation' of contract terms and not to interpret a contract in a way that would 'render its provisions meaningless.'" *Harding v. Diamond Resorts Holdings, LLC*, No. 2:17-cv-00248-RFB-VCF, 2017 WL 6378967, at *4 (D. Nev. Dec. 13, 2017) (quoting *Caldwell v. Consol. Realty & Mgmt. Co.*, 668 P.2d 284, 287 (Nev. 1983)). Interpreting the clause "recklessly and with the knowledge that damage, death,

delay, injury or loss would probably result" to mean nothing more than recklessly would render the second part of the clause meaningless. Thus, the knowledge prong must add something more than the recklessness standard. Because the plain language of this clause pertains to the Handling Company's knowledge, the Court finds that this knowledge requirement refers to Defendant's subjective knowledge, as opposed to the objective "knew or should have known" standard baked into recklessness. Moreover, the contract language uses the word "knowledge" only, not a variation of "knew or should have known" or "knew or had reason to know," suggesting that the knowledge prong of the contractual standard refers to actual knowledge. Accordingly, the Court finds that Plaintiff must prove that Defendant acted recklessly *and* that Defendant had knowledge that damage, death, delay, injury or loss would probably result.

### 2. Plaintiff Does Not Present Any Facts Pertaining to Defendant's Knowledge

The Court finds that Defendant met its burden on its Motion for Summary Judgment by demonstrating that Plaintiff failed to show that Defendant had knowledge that damage, death, delay, injury, or loss would probably result. *See Celotex Corp.*, 477 U.S. at 323–24. Defendant points to Mr. Bocalbos's testimony that he had successfully maneuvered aircrafts without wing walkers before and therefore had no reason to believe that doing so in again would result in damage. (Def.'s Mot. Summ. J. 13:5–16). In other words, Mr. Bocalbos, and in turn Defendant, did not have knowledge that damage would probably result. Therefore, Defendant has established that Plaintiff failed to make a showing sufficient to establish an element essential to Plaintiff's contractual claims.

On Defendant's Motion, the burden then shifts to Plaintiff to establish that a genuine issue of material fact exists. *Matsushita*, 475 U.S. at 586. Plaintiff, however, fails to present any facts pertaining to Defendant's knowledge. (*See* Resp. Def.'s Mot. Summ. J. 5:16–9:8, ECF No. 43). Instead, Plaintiff relies solely on an objective standard of liability and offers no

///

argument in the alternative. (*See* Pl.'s Mot. Summ. J. 15:1–17:2); (Resp. Def.'s Mot. Summ. J. 5:16–9:8). Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment.

### C. All Remaining Arguments and Motions are Moot

Plaintiff's Motion for Summary Judgment assumes the contractual standard for liability is solely whether Defendant was reckless. (Pl.'s Mot. Summ. J. 14:1–15:15). Because the Court grants Defendant's Motion for Summary Judgment based on a two-pronged contractual liability standard, the Court finds that Plaintiff's Motion is now moot. Additionally, because the Court did not rely on expert testimony, the Court further finds that Defendant's Motion to Exclude Expert Testimony is also moot. Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion to Exclude Expert Testimony.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 28), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 32), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Expert Testimony, (ECF No. 30), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Seal, (ECF No. 33), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to enter Judgment accordingly and close the case.

**DATED** this __28__ day of March, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court